In the Matter of a Demand to Appear and to be Examined Under Oath Issued to the Ida County Courier and The Reminder.

### IDA COUNTY COURIER AND THE REMINDER, Appellant,

v.

### ATTORNEY GENERAL of State of Iowa, Appellee.

No. 65667.

Supreme Court of Iowa.

March 17, 1982.

Thomas L. McCullough of McCullough Law Firm, P.C., Sac City, for appellant.

Thomas J. Miller, Atty. Gen., and J. Eric Heintz, Asst. Atty. Gen., for appellee.

Considered by LeGRAND, P. J., and McCORMICK, ALLBEE, McGIVERIN, and LARSON, JJ.

LeGRAND, Justice.

This appeal asks us to determine whether the hearing provided for in section 553.10, The Code 1979, is an evidentiary hearing with the right to cross-examine. The Ida Courier and The Reminder (The Courier) says it is. The attorney general takes the opposite view. The trial court held no such right existed. We reverse and remand with instructions. All statutory references are to the 1979 Code.

Chapter 553, known as the Iowa Competition Law, was first enacted in 1977. Its purpose is to prevent "restraint of economic activity and monopolistic practices." Section 553.2. Violations of the act are to be investigated by the attorney general. Section 553.7, The Code.

The Courier is a weekly newspaper published by Midwest Industries, Inc., in Ida Grove. Upon receiving a complaint that The Courier was engaging in illegal pricing practices in the sale of advertising space, the attorney general conducted a preliminary investigation, obtained information from various sources, and concluded there was reasonable cause to believe that the rates charged by The Courier for advertising were less than one-half the published rates.

The attorney general issued a written demand under section 553.9, The Code, ordering The Courier to appear for examination under oath concerning a possible violation of the Iowa Competition Law. The Courier refused to do so. The attorney general then filed an application under section 553.10, The Code, asking the court to require The Courier to comply with the attorney general's demand. Notice of hearing on this application was served on The Courier, as the statute provides.

The Courier appeared at the time and place fixed by the notice and demanded the right to present evidence and to cross-examine the affiants upon whose information the order had been issued. Originally, the district court (Judge Richard W. Cooper) ruled The Courier had this right as a matter of fundamental fairness and due process. Later, Judge Cooper's order was modified (Judge David J. Blair) in a ruling which held that the hearing provided for by section 553.10 does not contemplate the presentation of evidence by the party under investigation nor does it permit such party to cross-examine the attorney general's informants. An interlocutory appeal to test this ruling was sought and granted.

This is not only a matter of first impression for the court; we are told it is also the first time the attorney general has filed an application to enforce the provisions of ch. 553, The Code. Statutes of similar purpose exist at both federal and state levels and provide some guidance for us. The law itself directs us to construe the chapter in harmony with federal laws having the "same or similar purposes." Section 553.2.

At the outset, we point out The Courier makes no claim of constitutional right to an evidentiary hearing. Its argument is exclusively one of statutory construction. Before discussing the merits, we mention one other important matter. The parties have limited their presentation to arguing the meaning of sections 553.9 and 553.10. We

believe, however, section 553.11 is necessarily involved in our review of the case under the general rule that statutes must be considered as a whole in construing a legislative enactment. *State v. Schlemme*, 301 N.W.2d 721, 723 (Iowa 1981); *In re the Estate of Bliven*, 236 N.W.2d 366, 369 (Iowa 1975). This is particularly applicable when, as here, a statute is being examined for the first time. *Hanover Insurance Co. v. Alamo Hotel*, 264 N.W.2d 774, 778 (Iowa 1978); *Wilson v. Iowa City*, 165 N.W.2d 813, 822 (Iowa 1969).

Chapter 553 grants broad investigatory and enforcement powers to the attorney general to accomplish the purposes of the Iowa Competition Law. If the attorney general has reasonable cause to believe a person "has engaged or is engaging in conduct prohibited" by this law, he may by written demand require the person under investigation to submit to examination under oath and to produce "documents or other tangible items" for examination and copying. Section 553.9. When the investigation focuses on an alleged violator other than a natural person, this authority extends to officers, directors, partners, fiduciaries, or employees of the suspected offender.

If any party refuses to obey the attorney general's written demand, section 553.10 outlines the procedure to be followed in securing obedience. We here set out the pertinent portion of that section:

> If a person objects or otherwise fails to obey a written demand or court order issued under section 553.9, the attorney general may file ... an application for an order to enforce the demand or order. *Notice of hearing and a copy of the application shall be served upon the person, who may appear in opposition to the application.* If the court finds that the demand or order is proper, that there is reasonable cause to believe there has been a violation of this chapter, and that the information sought or document or object demanded is relevant to the violation, it shall order the person to comply with the demand or order, subject to such

modification as the court may prescribe. Upon motion by the person and for good cause shown, the court may make any further order in the proceedings which justice requires to protect the person from unreasonable annoyance, embarrassment, oppression, burden, or expense.

(Emphasis supplied).

This is the statute which has triggered the dispute between the parties. They cannot agree on the *kind* of "hearing" a person is to have under this section. The term "hearing" has many meanings, ranging from a full trial-type inquiry to oral presentation of legal arguments without the right to produce evidence.

*Black's Law Dictionary* at 649 (5th ed. 1979), defines it this way:

> Hearing. Proceeding of relative formality (though generally less formal than a trial), generally public, with definite issues of fact or of law to be tried, in which witnesses are heard and parties proceeded against have right to be heard, and is much the same as a trial and may terminate in final order. It is frequently used in a broader and more popular significance to describe whatever takes place before magistrates clothed with judicial functions and sitting without jury at any stage of the proceedings subsequent to its inception, and to hearings before administrative agencies as conducted by a hearing examiner or Administrative Law Judge.
>
> The introduction and admissibility of evidence is usually more lax in a hearing than in a civil or criminal trial.
>
> An *adversary* hearing exists when both parties are present at the hearing arguing their respective positions. An *ex parte* hearing exists when only one party is present at the hearing.
>
> Hearings are extensively employed by both legislative and administrative agencies and can be adjudicative or merely investigatory. Adjudicative hearings can be appealed in a court of law. Congressional committees often hold hearings prior to enactment of legislation; these hearings are then important sources of legislative history.

*See also* K. Davis, *Administrative Law Text* § 701 (1972) (hearing defined as "any oral proceeding before a tribunal.") This matter has also been addressed in an article by Judge Henry J. Friendly, who posed the question, "When a hearing is required, what kind of hearing must it be?" In partial answer to his own query, he made this interesting observation:

> For a long time we had labored under the illusion that ... a full trial-type hearing was demanded [if there were issues of adjudicative fact to be decided].... Although this approach is useful in many circumstances, it is only an approach. Moreover, it suffers from several insignificant defects. For one thing it does not indicate very accurately how to determine which issues are adjudicative.... For another, with the vast increase in the number of types of hearing required in all areas in which government and the individual interact, common sense dictates that we must do with less than full trial-type hearings even on what are clearly adjudicative issues.

H. Friendly, *"Some Kind of Hearing,"* 123 U.Pa.L.Rev. 1267, 1268 (1975).

It is now generally agreed that not every hearing is necessarily one which entitles the parties to present evidence; but that is of little help in resolving this appeal. Our task is to determine what kind of hearing the legislature intended to afford by enacting the Iowa Competition Law.

We have never interpreted the word "hearing" as narrowly as the attorney general would now have us do. In *Equitable Life Ins. Co. of Iowa v. McNamara*, 224 Iowa 859, 864, 278 N.W. 910, 913 (1938), we said:

> We are inclined to accept the definition of "hearing" as meaning the trial of an issue, including the introduction of evidence, arguments, the consideration by the court, and the final decree and order. [citations]

In the earlier case of *Thede v. Thornburg*, 207 Iowa 639, 645–46, 223 N.W. 386, 389 (1929), we noted that a statute which provided notice and hearing by the secretary of agriculture was the equivalent of a trial. In that case, we said:

> "The trial of a chancery suit is called a *hearing*, and, technically considered, this includes not only the introduction of evidence and the arguments of the solicitors but the pronouncing of the decree by the chancellor." [quoting *Babcock v. Wolf*, 70 Iowa 676, 679, 28 N.W. 490, 491 (1896)].

But aside from any technical meaning, the words "hearing" and "trial" are familiar terms, and are generally understood as meaning an examination of the facts and generally of law as well before some person or tribunal authorized to act.

A case analogous to the one now before us is *People ex rel Babbitt v. Herndon*, 119 Ariz. 454, 581 P.2d 688 (1978). There the court held, under an investigative statute similar to our section 553.10, that although the accused is not entitled to the full panoply of rights he would have at a formal trial, he was entitled "to present whatever evidence or arguments he may have in support of his defense." This, the court held, did not include the right to discovery or to other pretrial protections but it did accord the accused the right to show by his own evidence the absence of probable cause. *Id.* at 458, 581 P.2d at 692.

A number of courts under varying circumstances have interpreted "hearing" to mean substantially what we hold here. *See, e.g., People v. Ivenditti*, 276 Cal.App.2d 178, 180, 80 Cal.Rptr. 761, 762–63 (1969) ("A 'hearing' is generally understood to be a proceeding where evidence is taken to the end of determining an issue of fact and decision made on the basis of that evidence."); *Darmos v. Pasqua*, 34 Conn.Supp. 529, 530–31, 374 A.2d 814, 815 (1976) ("A 'hearing' is generally understood to be a proceeding where evidence is taken to the end of determining an issue of fact and a decision made on the basis of that evidence."); *Doran v. Doran*, 7 Ill.App.3d 614, 616, 287 N.E.2d 731, 733 (1972) ("The word 'hearing' is a familiar term, generally understood as meaning a judicial examination of the issues of law and fact between the

parties. [citation omitted]. 'Hearing' should not be construed more narrowly than 'testimony' or 'evidence.' "); *Appeal of the Borough of West Alexander*, 450 Pa. 453, 460, 301 A.2d 662, 666 (1973) ("A 'hearing', if it means anything, contemplates a fair and impartial proceeding at which competent and relevant evidence may be presented.").

We now come to the part section 553.11 plays in arriving at the legislature's intent in providing for hearing under the Iowa Competition Law. We set out section 553.11 in full:

Before the attorney general files an application under section 553.10 and upon application of any person who was served a written demand or court order under section 553.9, upon notice and hearing, and for good cause shown, the district court may make any order which justice requires to protect the person from annoyance, embarrassment, oppression, or undue burden of expense, including the following:

1. That the examination of this person shall not be taken or that documents or other tangible items shall not be produced for inspection and copying;

2. That the examination or production of documents or other tangible items shall be had only on specified terms and conditions, including a change in the time or place;

3. That certain matters shall not be inquired into or that the scope of the examination or production shall be limited to certain matters;

4. That the examination or production and inspection shall be conducted with only those persons present as designated by the court;

5. That the transcript of the examination shall be sealed and be opened only by order of the court;

6. That a trade secret or other confidential research, development, or commercial information shall not be disclosed or shall be disclosed only in a designated way.

Significantly, section 553.11 provides a procedure by which a person may object *after* the attorney general has served a written demand under section 553.9 but *before* an application to compel obedience thereto has been filed under section 553.10. Although section 553.11, like section 553.10, affords a right to notice and hearing, there is an important difference in the wording of the two statutes. Section 553.11 allows the court to make findings on "good cause shown." The findings on a section 553.10 application need be supported only by the less demanding standard that there is "reasonable cause to believe" the statute has been violated.

Furthermore, section 553.11, in addition to empowering the court to make any order "which justice requires," lists six specific options which the court may exercise. They range from outright denial of any examination to the protection of confidential information by protective order. We are convinced the provisions of section 553.11 cannot be carried out except by considering evidence on disputed factual issues. We do not believe the legislature intended the court to make the wide range of decisions permitted by that statute without first determining the existence of facts justifying the result reached.

■■■ If this is true as to a "hearing" under section 553.11, we hold it is equally true as to a "hearing" under section 553.10. The general rule is that, when identical language is used at several places throughout a legislative enactment, it should ordinarily be given the same meaning. *Miles Homes, Inc. of Iowa v. Grant*, 257 Iowa 697, 700, 134 N.W.2d 569, 570 (1965); *City of Cedar Rapids v. Cox*, 250 Iowa 457, 469, 93 N.W.2d 216, 223 (1958), *appeal dismissed*, 359 U.S. 498, 79 S.Ct. 1118, 3 L.Ed.2d 976 (1959). *But see Patterson v. Iowa Bonus Board*, 246 Iowa 1087, 1094–95, 71 N.W.2d 1, 6 (1955) (exception to general rule when subject matter is not the same). We are convinced the general rule applies here.

We recognize the problem inherent in ch. 553. Under a literal interpretation of sections 553.10 and 553.11, a party could have

*three* evidentiary hearings. As already pointed out, section 553.11 affords an evidentiary hearing before the attorney general files an application pursuant to section 553.10. After the application is filed, a hearing is required to determine if reasonable cause exists to believe there is a violation of the Iowa Competition Law. Before that hearing, however, section 553.10 permits a preliminary hearing on motion if the party under investigation asks a protective order to prevent "unreasonable annoyance, embarrassment, oppression, burden, or expense."

In large measure these provisions for hearings overlap. We are convinced the legislature intended a party to have the right to produce evidence, and to cross-examine the attorney general's informants, to show the investigation should not proceed. We are equally convinced, however, the legislature intended there should be only one such opportunity.

In statutory construction we should avoid results which are strained, impractical, or absurd, and we should give the statute a sensible and logical construction. *Telegraph Herald, Inc. v. City of Dubuque*, 297 N.W.2d 529, 532 (Iowa 1980). To allow a party three—or even two—hearings under ch. 553 would indeed violate this canon of statutory construction.

We hold the Iowa Competition Law gives an investigated party the right to a single evidentiary hearing, with the right to cross-examine the attorney general's informants. This may be under section 553.11, if a timely motion is filed; or, if not, it may be under section 553.10. It cannot be under both sections.

In the present case, The Courier did not seek a hearing under section 553.11. It is, therefore, entitled to have one under section 553.10. The order denying such a hearing is reversed, and the case is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.